A07A1570. HODGE v. THE STATE.
(652 SE2d 634)

RUFFIN, Judge.

A jury found Willie C. Hodge guilty of five counts of armed robbery, three counts of possessing a firearm during the commission of a crime, and one count of possessing a firearm as a convicted felon. Hodge appeals, arguing that the trial court erred in denying his challenge to the State's peremptory jury strikes under *Batson v. Kentucky*.[1] He also asserts that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

1. At trial, Hodge claimed that the State improperly struck two African-American members of the jury panel — jurors 14 and 22 — on the basis of their race, in violation of *Batson*.[2] When raising a *Batson* challenge, a defendant must first make a prima facie showing of racial discrimination.[3] Once the showing is made, the prosecutor must provide a race-neutral explanation for the strike.[4] The trial court then determines whether the defendant proved discriminatory intent.[5] The lower court's finding on this issue "is entitled to great deference and shall be affirmed unless clearly erroneous."[6]

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[2] Hodge also challenged the State's decision to strike juror 13, but he does not present any argument with respect to that strike on appeal.

[3] See *Ware v. State*, 258 Ga. App. 706, 707 (2) (574 SE2d 898) (2002).

[4] See id.

[5] See id.

[6] Id.

Apparently concluding that Hodge made a prima facie showing of discrimination, the trial court required the prosecutor to set forth her reasons for the strikes. The prosecutor responded that she struck juror 14 because the juror was unemployed for a period of time and juror 22 because the juror's husband was unemployed and not seeking employment. Explaining that unemployment demonstrates a lack of commitment and dedication to the community, the prosecutor noted that she also struck a white juror with a sporadic employment history. The trial court deemed the prosecutor's explanations race neutral and determined that Hodge had not proven discriminatory intent.

We find no error. The ultimate inquiry in a *Batson* challenge is not whether the prosecutor's explanation for the strikes is suspect or irrational, but whether the prosecutor "is telling the truth in his or her assertion that the challenge is not race-based."[7] Such credibility determination "lies peculiarly within a trial judge's province."[8]

In exercising her peremptory strikes, the prosecutor focused on periods of unemployment. And Georgia law permits the State to strike a prospective juror who lacks employment.[9] We recognize that the prosecutor extended her employment criteria not only to jurors, but to their spouses as well. Again, however, the basis for a peremptory strike need not "make[ ] sense" or be persuasive; it must only be race neutral and free from discriminatory intent.[10] The trial court was authorized to find the prosecutor's explanation — that periods of unemployment experienced by a juror or a juror's spouse raised questions about the juror's community commitment — met this requirement.[11]

On appeal, Hodge argues that juror 14 was a homemaker — rather than "unemployed" — and that the State did not strike white homemakers. The prosecutor asserted below, however, that she did "not have anywhere in [her] notes" that juror 14 claimed to be a homemaker. According to the prosecutor, juror 14 was stricken based on unemployment, "not . . . because she said she was a homemaker." The record also shows that juror 14 listed her occupation as "unemployed" on her juror questionnaire.

---

[7] (Punctuation omitted.) *Taylor v. State*, 279 Ga. 706, 708 (3) (620 SE2d 363) (2005).

[8] (Punctuation omitted.) Id.

[9] See *Ware*, supra at 708; see also *Whatley v. State*, 266 Ga. 568, 570 (3) (468 SE2d 751) (1996).

[10] *Taylor*, supra at 707.

[11] See *Minor v. State*, 264 Ga. 195, 197-198 (5) (442 SE2d 754) (1994) (trial court did not err in denying *Batson* challenge where prosecutor explained that he struck an African-American night club singer who was unemployed and not seeking employment because such employment history showed a lack of commitment and dedication to the community).

A prosecutor "may strike from mistake, or from ignorance, or from idiosyncracy so long as the reasons do not relate to a juror's race."[12] In this case, the prosecutor asserted that she believed juror 14 had been unemployed, and she did not recall that the juror was a homemaker. The trial court was authorized to credit this explanation. Similarly, even if the prosecutor mistakenly concluded that employment status reveals something about community commitment, the trial court was permitted to find the prosecutor's decision to strike jurors 14 and 22 race neutral, particularly given that the State struck a white juror for periodic unemployment.[13] The trial court, therefore, did not err in denying Hodge's *Batson* challenge.[14]

2. Hodge also argues that he received ineffective assistance of counsel at trial. To succeed in this claim, he must show "both that counsel's performance was deficient and that the deficient performance prejudiced the defense."[15] The trial court rejected Hodge's ineffective assistance argument, finding that he failed to make the required showing. We will affirm this ruling on appeal unless it is clearly erroneous.[16]

(a) Hodge first argues that counsel was ineffective in failing to timely request a poll of the jury following the verdict. The indictment in this case was lengthy, charging Hodge with numerous counts, including armed robbery and possession of a firearm during the commission of a felony. The indictment also alleged one count of possession of a firearm by a convicted felon. The trial court bifurcated the felon in possession count from the remaining charges, permitting the State to offer evidence regarding Hodge's previous felony conviction only after the jury returned its verdict on the other counts.

Following the verdict on the main portion of the indictment, trial counsel did not request a poll of the jury. Instead, the parties proceeded directly to try the felon in possession charge. While the jury was deliberating on that count, trial counsel asked the court to poll the jury about the main verdict. The trial court questioned jurors as to that verdict, and one juror responded "I'm not sure" and "I'm torn" when asked whether it was her "verdict now." The trial court returned the main verdict to the jurors, instructed them to deliberate further on those charges, and also answered a question they posed with respect to the felon in possession count. Thereafter, the jury returned the same verdict it had reached earlier on the main charges. It also found Hodge guilty of possessing a firearm as a convicted felon.

---

[12] (Punctuation omitted.) Id. at 198.
[13] See id.
[14] See *Taylor*, supra; *Minor*, supra; *Ware*, supra.
[15] (Punctuation omitted.) *Brooks v. State*, 232 Ga. App. 115, 119 (15) (501 SE2d 286) (1998).
[16] See id.

Hodge argues that if counsel had asked to poll the jurors immediately following their initial verdict, they would have reconsidered that verdict before the State presented evidence regarding his previous felony conviction. According to Hodge, such evidence prejudiced the jurors during their re-deliberation. He thus claims that the delay in counsel's jury poll request constituted ineffective assistance.

Denying Hodge's claim, the trial court found that failure to timely request a jury poll does not amount to deficient performance. We agree. Hodge has not cited — and we have not found — any authority requiring trial counsel to poll the jury to provide effective representation. On the contrary, we have consistently rejected ineffective assistance claims based on the failure to conduct a poll.[17] And we see no reason why a *late* poll request constitutes a deficiency. Accordingly, the trial court properly denied Hodge's claim on this ground.

(b) Hodge also argues that trial counsel failed to adequately prepare for trial. Specifically, he claims that counsel's busy schedule prevented counsel from sufficiently reviewing the discovery produced by the State. At the hearing on Hodge's motion for new trial, however, counsel testified that he spent 45 to 50 hours reviewing the discovery before trial. Before opening statements, he completed his review — including watching all videotapes — and prepared a trial notebook. He also provided a copy of the written discovery to Hodge, although he did not have an opportunity to view the various videotapes with his client.

Hodge argues that the lack of pre-trial preparation forced counsel to spend time immediately before trial reviewing discovery when he "should have been preparing for his opening statement and for cross-examination of witnesses." But counsel testified that he reviewed all of the State's evidence before opening statements began, and Hodge has not "pointed to any specific instances at trial where he contends that, due to lack of preparation, his counsel's performance fell below an objective standard of reasonableness."[18] We further note that, although the jury found Hodge guilty of numerous crimes relating to several armed robberies, it acquitted him of three other offenses — including kidnapping — involving a different robbery.[19]

---

[17] See id. at 117 (7); *Wynn v. State*, 228 Ga. App. 124, 129 (3) (d) (491 SE2d 149) (1997); *Aleman v. State*, 227 Ga. App. 607, 614 (3) (h) (489 SE2d 867) (1997).

[18] *Aleman*, supra at 611 (2) (b).

[19] See *Jackson v. State*, 281 Ga. App. 506, 511 (3) (636 SE2d 694) (2006) (jury's acquittal of defendant on several offenses " 'strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render' ").

Hodge has not shown that trial counsel's preparation was deficient or prejudiced him in any manner. Accordingly, the trial court did not err in rejecting this ineffective assistance claim.[20]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 9, 2007

*Christopher T. Adams*, for appellant.
*Daniel J. Porter, District Attorney, Jeanette F. Shaw, Assistant District Attorney*, for appellee.

[20] See *King v. State*, 287 Ga. App. 375, 378 (2) (b) (651 SE2d 496) (2007); *Mayfield v. State*, 276 Ga. App. 544, 547 (3) (623 SE2d 725) (2005); *Allen v. State*, 272 Ga. App. 23, 26 (3) (611 SE2d 697) (2005).